The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

|  |  |  |
|---|---|---|
| THE THOMPSONS FILM, LLC, | ) | Case No.: 2:13-CV-560-RSL |
| Plaintiff, | ) ) ) | |
| v. | ) ) | PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING |
| DOES 1 – 194, | ) ) | SUBPOENAS |
| Defendants. | ) ) ) | |

Comes now The Thompsons Film, LLC, by and through its counsel of record, Maureen C. VanderMay and The VanderMay Law Firm PC, and responds to the Court's Order to Show Cause and Quashing Subpoenas filed on May 9, 2013.  Dkt. # 10.

## STATEMENT OF RELEVANT FACTS

### A.  Commencement of Case and Status of Preliminary Discovery

On March 28, 2013, Plaintiff filed a copyright infringement action with this Court against 194 Doe Defendants alleging the infringement of its motion picture entitled *The Thompsons*.[1]  On

---

[1]     The Court's order states that this action is one of fifty-one copyright infringement actions filed against approximately 2,773 Doe defendants in this district in a four month period.

| | | |
|---|---|---|
| 1 | PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-560) | The VanderMay Law Firm PC 2021 S. Jones Blvd. Las Vegas, Nevada 89146 (702) 358-9300 |

1  that date, Plaintiff also filed its *Ex Parte* Motion to Expedite Discovery seeking permission to

2  serve subpoenas on the Internet Service Providers ("ISPs") identified on Exhibit 1 to Plaintiff's

3  complaint.  Dkt # 4.  The Court granted Plaintiff's motion by order filed on April 1, 2013.  Dkt #

4  6.

5         Upon receipt of this order, Plaintiff's counsel immediately began researching the

6  registered agents for the ten ISPs at issue so that personal service could be effected upon them

7  and her staff began preparing the subpoenas and related documents.  Although Plaintiff's counsel

8  had researched some of the ISPs in connection with a previously filed copyright infringement

9  action, this action involved several ISPs that counsel had not previously served.  With respect to

10 these entities, counsel researched their legal names so that service could be effected on the proper

11 party and also communicated with several of the ISPs to confirm that the proper entity had been

12 identified, that personal service would be effected properly, and that any follow up service

13 requested by the ISPs would be accomplished.  Plaintiff's counsel's staff forwarded these

14 subpoenas, related documents and copies of the Court's Order Granting Leave for Preliminary

15 Discovery ("April 1st order / Dkt # 6") via overnight delivery to its process server in Olympia,

16 Washington on April 9, 2013.  Counsel's efforts to ensure that the ISPs were personally served as

17 quickly as possible are described in the accompanying declaration of counsel at ¶¶ 3-7.

18        Personal service was effected on the following ISPs on April 12, 2013:

19        1.      WaveDivision Holdings, LLC at its place of  business in Kirkland, Washington;

20        2.      Broadstripe, LLC through its registered agent, C T Corporation System;

21        3.      Integra Telecom on its registered agent, National Registered Agents, Inc.;

Order to Show Cause and Quashing Subpoenas ("Court's OSC / Dkt. # 7") at 1.  Plaintiff's
counsel has filed one other action alleging copyright infringement in this district (*Elf-Man, LLC
v. Does 1-152,* Case No. 2:13-CV-0507-RSL, filed on March 20, 2013).  Plaintiff's counsel has
no knowledge of or involvement with the remaining actions referenced by the Court's order.

2  PLAINTIFF'S RESPONSE TO ORDER TO          The VanderMay Law Firm PC
   SHOW CAUSE AND QUASHING SUBPOENAS         2021 S. Jones Blvd.
   (2:13-CV-560)                             Las Vegas, Nevada 89146
                                             (702) 358-9300

4.    Comcast Cable Holdings through its registered agent, C T Corporation System;

5.    CenturyLink, Inc. through its registered agent, C T Corporation System;

6.    Frontier Communications of America, Inc. through its registered agent, Corporation Service Company;

7.    Verizon Wireless (VAW) LLC through its registered agent, C T Corporation System; and

8.    Toledo Tel., through its registered agent in Toledo, Washington; and

9.    Fairpoint Communications, Inc., through its registered agent, C T Corporation System.

ISP Nobis Technology Group, LLC  informed Plaintiff's counsel that it does not maintain a registered agent in the State of Washington (despite the fact that it conducts business within the state) and indicated that it required personal service at its place of business in Phoenix, Arizona.  After locating an Arizona process server, Plaintiff's counsel forwarded the subpoena and related documents for this ISP to its process server via facsimile on April 15, 2013, and service was personally effected on April 17, 2013.  Declaration of Counsel at ¶ 6.

The Court's OSC notes that more than five weeks have elapsed since discovery was authorized.  Court's OSC / Dkt. # 7 at 2.  While Plaintiff acknowledges that this is the case, it submits that at the time of receipt of the Court's OSC it had been unable to effect service on the individual Defendants and to amend its complaint to name said Defendants because of its compliance with the time frames set forth in the Court's April 1st order.  That order provided as follows: 1) each ISP was to give written notice to its affected subscriber(s) "as soon as possible after service of the subpoena[;]"  2) ISPs and affected subscriber(s) were afforded thirty days "from the date of service of the subpoena on the ISP to object to the subpoena[;]" and 3) if no

3    PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

1   objection were served, the ISP was to "comply with the subpoena within ten (10) days."[2]  April

2   1st order / Dkt. # 6 at 1-2.  As such, Plaintiff was required to set a compliance date of at least

3   forty days from the date that service was effected.

4          Because service was effected on nine of the ISPs on April 12, 2013, under the terms of

5   the April 1st order, the deadline for the filing of objections to the subpoenas was May 13, 2013 –

6   four days after the Court issued its order quashing the subpoenas on May 9, 2013.[3]  In order to

7   allow for the thirty day notice period to affected subscribers and the additional ten days within

8   which the ISPs were to respond to the subpoenas absent the filing of an objection, the compliance

9   date stated on these nine subpoenas was May 22, 2013.[4]  Until such time as the information

10  responsive to these subpoenas was provided directly to The VanderMay Law Firm PC from the

11  ISPs, Plaintiff could not have named the individual Defendants and have them served.

12         In light of the foregoing chronology and the accompanying declaration of counsel,

13  Plaintiff submits that it has not unduly delayed the identifying and naming of the Defendants to

14  this action.  Rather, it has made every effort to ensure that the ISP subpoenas were issued and

15  served as quickly as possible and that the terms of the Court's April 1st order were fully and

16  _____

17         [2]     This time frame for subpoena compliance was, of course, extended in the event

18  that an objection was filed by either an ISP or an affected subscriber.  In that instance, disclosure

19  of identifying information was prohibited until further order from the Court.  April 1st order / Dkt. # 6 at 2.

20         [3]     Because of the need to effect personal service in Arizona, the compliance date on

21  the Nobis Technology Group, LLC subpoena was necessarily later than the nine subpoenas served in Washington.  Because that subpoena was served on April 17, 2013, the thirty day

22  notice period had not yet run when the issued its order quashing these subpoenas.

23         [4]     As explained in the declaration of counsel, one ISP requested an extension of time

24  for subpoena compliance due to its processing times and the need to ensure that its subscribers were afforded due notice.  When the ISP insisted that it could not comply with the subpoena in

25  the time allowed in light of the notice period afforded to its subscribers, counsel agreed to the requested extension.  *See* accompanying declaration of counsel at ¶ 8.

26

27  4   PLAINTIFF'S RESPONSE TO ORDER TO          The VanderMay Law Firm PC
        SHOW CAUSE AND QUASHING SUBPOENAS        2021 S. Jones Blvd.
28      (2:13-CV-560)                            Las Vegas, Nevada 89146
                                                 (702) 358-9300

strictly followed.  Indeed, when an ISP provided subscriber information prior to the expiration of

the thirty day notice period set forth in the April 1st order, counsel immediately contacted the ISP,

explained the notice requirement set forth in the Court's order, provided an additional copy of the

Court's order and stated that Plaintiff would disregard the information provided.  Counsel

requested that the response to the subpoena be resubmitted at a later time in accordance with the

Court's order.  Similarly, Plaintiff's counsel notified another ISP that it should not produce

subscriber information prior to the compliance date because of the time limitations established by

this Court.  *See* the accompanying declaration of counsel at ¶¶ 9-10 and Exhibits 1 and 2.

### B.  Contacts With Affected Subscribers

Prior to filing this action, Plaintiff's counsel established office procedures for fielding any

inquiries from subscribers.  After serving the subpoenas in the instant action, counsel has been

contacted by a small number of individuals who have received notice from their ISPs of the

subpoenas issued pursuant to the Court's April 1st order.  The following outlines the procedures

followed by counsel's office in responding to such contacts prior to receiving notice of the

Court's OSC:

When a person contacts The VanderMay Law Firm PC and identifies himself or herself as

a subscriber or counsel for a subscriber, our office staff asks for the following information:  their

name, address, telephone number, their ISP, the case number and the name of the motion picture

at issue.  If the caller provides this information, counsel's office forwards to them a  packet of

information explaining the nature of the case and Plaintiff's position on resolution.

The Court's OSC references "the possibility that the judicial authority of the United

States may be used to wrest improvident settlements from pro se litigants under threat of huge

statutory penalties."  Court's OSC / Dkt. # 7 at 2.  Plaintiff commenced this action not to wrest

improvident settlements but to seek redress for the piracy of its copyrighted work.  As explained

in detail in Plaintiff's complaint, piracy via peer-to-peer networks such as BitTorrent is a

5   PLAINTIFF'S RESPONSE TO ORDER TO
    SHOW CAUSE AND QUASHING SUBPOENAS
    (2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

widespread problem that is having a significant adverse impact on the entertainment industry and, particularly, on Plaintiff.  Plaintiff has filed this action in an effect to stop the theft of its copyrighted material and for no other purpose.  *See* accompanying declaration of counsel at ¶¶ 12-13.

## SUBSTANTIVE RESPONSES

1.  Plaintiff's counsel was served electronically with the Court's OSC on Friday, May 10, 2013, at 11:49 a.m.  On that date, counsel was out of the office and she did not review this order until approximately midday on Monday, May 13, 2013.  Upon reviewing this order, counsel began notifying the ten above-referenced ISPs of the fact that they need not respond to the subpoenas previously served upon them.  All ten ISPs previously served with subpoenas have been afforded this notice.  *See* accompanying declaration of counsel at ¶ 11.

2.  All requested documentation is being filed contemporaneously under seal as required by the Court's order.  *See* accompanying declaration of counsel at ¶ 17 and Exhibit 3.  Since reviewing the Court's OSC, Plaintiff's counsel staff have been directed to simply take a message from any callers regarding this action who identify themselves as subscribers or counsel for subscribers.  Pursuant to the Court's directive, counsel has not returned any of these calls, nor have any additional correspondence (including emails) or information packets been set out since the Court's OSC was seen by Plaintiff's counsel.

3.  For the reasons set forth *infra* in the Legal Argument section of this response, Plaintiff respectfully requests the Court conclude that joinder of the 194 Doe Defendants was proper and that it allow this action to proceed as filed by Plaintiff, subject to any subsequent Court order and/or the request of any named Defendant to be severed due to a claim of prejudice and named in a separate action.

4.  Plaintiff respectfully requests that the Court lift the stay of this proceeding imposed in its OSC and that it reinstate the ISP subpoenas quashed in said order.

6    PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

**LEGAL ARGUMENT**

**Joinder of Plaintiff's Claims Against the Doe Defendants Is Proper Under F.R.C.P. 20(a)(2) and the Claims Should Not Be Severed**

Plaintiff's complaint joins the 194 Doe Defendants pursuant to the permissive joinder rule set forth in F.R.C.P. 20(a)(2). This provision provides in pertinent part as follows:

"Persons . . . may be joined in one action as defendants if:

"(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

"(B) any question of law or fact common to all defendants will arise in the action."

Under well-established decisional law, this rule has been broadly construed in favor of joinder. *See, e.g., United Mine Workers v. Gibbs,* 383 US 715, 724 (1966) (noting with respect to the Federal Rules of Civil Procedure that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 558 F.2d 914, 917 (9th Cir. 1977) ("We start with the premise that Rule 20, Fed. Rules Civ. Proc., regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits"). *See also* 4 James William Moore, *Moore's Federal Practice* (3d ed. 2013) § 20.02[1][a] ("Consistent with other federal joinder provisions, the permissive party joinder rule emphasizes pragmatism; joinder is not based on arcane historic formulations of legal relationships, but on common sense, fact-based considerations.").

The present controversy easily meets Rule 20(a)(2)'s two pronged requirement for permissive joinder. First, Plaintiff's complaint alleges that all of the Doe Defendants participated in the unlawful downloading of its motion picture *The Thompsons* in either the same transaction or occurrence or through a series of related transactions or occurrences. The pertinent allegations

7    PLAINTIFF'S RESPONSE TO ORDER TO         The VanderMay Law Firm PC
     SHOW CAUSE AND QUASHING SUBPOENAS        2021 S. Jones Blvd.
     (2:13-CV-560)                            Las Vegas, Nevada 89146
                                              (702) 358-9300

read as follows:

¶ 26 – "Defendants are a group of BitTorrent users or peers *whose computers are collectively interconnected and used* for illegally copying and distributing Plaintiff's motion picture." (Emphasis added).

¶ 27 – "Defendants and each of them have illegally and without authorization from Plaintiff *copied, downloaded, shared and uploaded* Plaintiff's motion picture using the BitTorrent system." (Emphasis added.)

In its explanation of how BitTorrent works to download content, Plaintiff's complaint, Dkt. # 1, at ¶¶45-62, Plaintiff makes the following additional allegations regarding the relationship among these Defendants:

¶ 58 – " The effect of this distributed network of users all downloading and uploading the same file creates what is commonly known as a 'swarm' wherein users operate collectively to copy and distribute media and content.**"**

¶ 59 – "Members of the swarm become interconnected to download files, wherein the download creates an exact digital copy on the downloaders' computers.  As additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file."

¶ 60 – "This distributed nature of BitTorrent leads to a rapid viral sharing of media and content throughout the collective peer users.  As more peers join the collective swarm, the frequency and speed of successful downloads also increases."

In describing Defendants' conduct, Plaintiff's complaint alleges further as follows:

¶ 68 – "By participating in a swarm, each Defendant participated in the exact same or nearly identical transaction, occurrence, or series of transactions or occurrences as the other Defendants."

8   PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

¶ 69 – "Upon information and belief, many Defendants also acted in concert with others, including other Defendants by participating in a Peer Exchange."

¶ 70 – "Upon information and belief, many Defendants also acted in concert with other Defendants and swarm members and by linking together globally through use of a Distributed Hash Table."

¶ 71 – "Each defendant's conduct is effectively a collective enterprise constituting substantially similar or identical facts."

With respect to the issue of joinder, Plaintiff's complaint alleges as follows:

¶ 34 – "Plaintiff acknowledges that joinder in this action under F.R.C.P. 20(a)(2) is permissive in that Plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences or transactions and that there are questions of law and fact common to each of the Defendants."

¶ 35 – "All of the Defendants have collectively acted through BitTorrent to illegally download and distribute Plaintiff's motion picture, each damaging Plaintiff."

¶ 36 – "As such, Plaintiff's rights to relief, as stated below, ultimately arise out of the same series of transactions and occurrences."

¶ 37 – "This action also raises substantial questions of law and fact common to all Defendants."

¶ 38 – "Permissive joinder in the instant case is to permit a more efficient management of Plaintiff's claims against the several Defendants and to reduce the costs to Plaintiff and Defendants and to reduce the costs and burdens on the Court."

¶ 39 – "Notice is provided, that on being specifically identified and on request from an identified Defendant, Plaintiff agrees to sever any Defendant that claims prejudice in being joined in this matter and to proceed against each such Defendant individually."

/ / / /

9        PLAINTIFF'S RESPONSE TO ORDER TO
         SHOW CAUSE AND QUASHING SUBPOENAS
         (2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

1   These allegations, taken together, demonstrate that Plaintiff has not merely alleged that all

2   Defendants unlawfully downloaded its motion picture.  Rather, it has alleged that the use of

3   BitTorrent to download *The Thompsons* was necessarily a collective enterprise in which

4   Defendants participated in order to engage in this infringing activity.[5]

5   The Court's OSC references the fact that the infringing downloads are alleged to have

6   occurred over a three month period.  Court's OSC /Dkt. # 7 at 1.  Plaintiff submits that because

7   Defendants' cooperative activity in downloading a given work via BitTorrent need not and

8   typically does not occur simultaneously, this time span does not refute Plaintiff's assertion that

9   these Defendants in a single transaction or occurrence or a series of closely related transactions or

10  occurrences in their downloading of *The Thompsons*.  It is the manner in which the BitTorrent

11  technology operates and not the temporal relationship among Defendants that renders these

12  claims subject to permissive joinder.

13  The United States District Court of the Southern District of New York recently addressed

14  this issue  in *Malibu Media, LLC v. Does 1-5,* No. 2:12-cv-2954 (NRB) at 9-10 (S.D.N.Y.

15  August 24, 2012) (memorandum and order allowing joinder), and concluded that the Defendant's

16  BitTorrent activity over a period of months was a part of the same "series of transactions or

17

18

19

20      [5]      The Court's OSC states that "plaintiff alleges that all 194 defendants participated
        in a single 'swarm' utilizing interactive peer-to-peer file transfer technology . . . ."  Court's OSC
21      / Dkt. # 7 at 1.  Plaintiff submits that its complaint alleges that Defendants participated in "one or
        more swarms in which numerous Defendants engaged in mass copyright infringement of
22      Plaintiff's motion picture" and that "[e]ach Defendant illegally uploaded and shared Plaintiff's
        motion picture within a swarm."  Complaint, Dkt. # 1, at ¶¶ 65-66.  Given the inherently
23      collective and interdependent nature of the BitTorrent technology, Defendants' downloading of
        *The Thompsons* over a short period of time and within this district constitutes either a single
24      transaction or occurrence or at least a series of closely related transactions or occurrences
        regardless of whether they acted in a single or multiple swarms.
25

26

27  10    PLAINTIFF'S RESPONSE TO ORDER TO          The VanderMay Law Firm PC
              SHOW CAUSE AND QUASHING SUBPOENAS   2021 S. Jones Blvd.
28            (2:13-CV-560)                       Las Vegas, Nevada 89146
                                                  (702) 358-9300

occurrences."[6]  The Court stated as follows:

> "The length of time over which defendants are alleged to have participated in the swarm - eighty-eight days - does not undermine the interrelated nature of their actions. '[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap . . . .' Patrick Collins, 2012 WL 1190840, at *8. As described above, the BitTorrent protocol operates such that every user is logically related to every other user who participates in the same swarm, regardless of their time of participation. *See id.; see also First Time Videos, LLC v. Does 1-95*, No. 11 Civ. 3822 (MEJ), 2011 WL 4724882, at *6 (N.D. Cal. Oct. 7, 2011) (noting that 'even after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm').

> "While the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time. *Cf. Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (noting that '[w]ith the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency, requiring greater use of the more liberal joinder procedures' (internal quotation marks omitted). Here, the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same 'series of transactions or occurrences.' *See Digital Sin 176*, 2012 WL 263491, at *5. Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied."

With respect to Rule 20(a)(2)'s second requirement, i.e. that "any question of law or fact common to all defendants will arise in this action[,]"  Plaintiff's complaint alleges that all 194 Doe Defendants used the same technology to download its copyrighted motion picture.  As such, the governing law will be largely identical with respect to all claims, as will many of the facts concerning how this work was downloaded by Defendants.  While some Defendants at a later stage in this proceeding may raise defenses that turn on specific factual circumstances, the existence of some individual factual issues does not defeat joinder.  Rule 20(a)(2) requires only *one or more* common factual or legal issues – not complete identity of issues.  *See* 7 Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 1653 ("The second requisite that must be satisfied to sustain permissive joinder of parties is that a question of law or fact common

---

[6]     Although this decision concerns a case involving an allegation of a single swarm of BitTorrent users, its reasoning applies with equal force to the present controversy.

11   PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

to all the parties will arise in the action.  Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact.").[7]

Plaintiff's complaint acknowledges that joinder in this case is permissive rather than mandatory and it expressly agrees to sever any named Defendant who claims prejudice as a result of being joined in this action and to proceed individually against each such Defendant.  *See* complaint, Dkt. # 1 at ¶¶ 34, 39.  In Plaintiff's view, the permissive joinder of its claims coupled with this agreement to sever based solely upon an allegation of prejudice by any named Defendant will promote the efficient processing of these claims while protecting the interest of any Defendant who objects to joinder.  This efficiency is demonstrated by the manner in which this case has been processed to date.  Had Plaintiff opted to file 194 separate actions against these Defendants, the Court would have received 194 complaints and related documents for initial processing, along with 194 separate motions to expedite discovery so that the information necessary to identify each Doe Defendant could be obtained from his or her ISP.  Of course, the content of these motions and the legal issues raised therein would be substantially identical. Such a proliferation of substantially identical claims would be directly contrary to the primary purpose of F.R.C.P. 20, which is to promote judicial efficiency and avoid the unnecessary multiplication of suits.  *See* 7 *Federal Practice and Procedure*, *supra,* at § 1652  ("The purpose of [F.R.C.P. 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  (Footnotes omitted)).  In declining to sever claims based upon docket management considerations, one district recently stated as follows: "Trading the

---

[7] The Wright, Miller & Kane treatise discusses the text of F.R.C.P. 20(a) prior to its 2007 amendment.  However, these amendments were stylistic only and the operative language was not altered from the predecessor version of the rule.  *See* Committee Notes on Rules – 2007 Amendment.

12    PLAINTIFF'S RESPONSE TO ORDER TO
      SHOW CAUSE AND QUASHING SUBPOENAS
      (2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

1    uncertainty of *possible* problems from multiple defenses for the certainty of multiple lawsuits

2    does not make practical sense, at this point, and seems contrary to the potential economies Rule

3    20 hopes to achieve."  Report and Recommendation Re: Motions to Sever Defendants, Dkt No.

4    6, at 15,  *Malibu Media, LLC v. Does 1-30,* No. 2:12-cv-13312-DPH-MJH ( E.D. Mich. May 16,

5    2013).[8]

6           At the very least, it would be premature to sever the claims against the Doe Defendants at

7    this early stage of the litigation.  F.R.C.P. 20(b), along with F.R.C.P. 21, provides the Court with

8    flexible tools for the efficient management of this action as it progresses, either through ordering

9    separate trials or severing the claims made against certain parties if circumstances so warrant

10   once this action has progressed.  *See* 7 *Federal Practice and Procedure, supra,* at § 1653 (noting

11   that an expansive reading of F.R.C.P. 20(a) "seems sound inasmuch as no difficulty is likely to

12   result from the joinder of even  marginally related parties at the pleading stage.  The court always

13   has discretion under Rule 20(b) to sever those parties whose claims may be tried more

14   conveniently in separate actions or whose continued presence might be prejudicial to other

15   litigants." (footnotes omitted)).

16          In a substantially similar copyright infringement action asserted against over 2,000 Doe

17   defendants based upon the downloading of motion pictures using BitTorrent technology, the U.S.

18   District Court for the District of Columbia denied motions to dismiss based upon improper

19   joinder. *Maverick Entertainment Group, Inc. v. Does 1-2,115,* 810 F. Supp. 2d 1 (D.D.C. 2011).

20   In reaching this conclusion, the Court noted the "same transaction, occurrence or series of

21   transactions or occurrences" language of Rule 20(a)(2) requires that the joined claims be

22

23   ─────────────────

24         [8]      Because it contains a detailed description of how BitTorrent works and also

25   discusses the decisions of various courts regarding the joinder of claims against BitTorrent
     participants, a true and correct copy of this Report and Recommendation is attached hereto as
     Attachment 1.

26

27   13    PLAINTIFF'S RESPONSE TO ORDER TO        The VanderMay Law Firm PC
              SHOW CAUSE AND QUASHING SUBPOENAS    2021 S. Jones Blvd.
28            (2:13-CV-560)                        Las Vegas, Nevada 89146
                                                   (702) 358-9300

1  "logically related." *Id.* at 12.  The Court concluded that the plaintiff's allegations regarding file

2  sharing through BitTorrent rendered the claims "logically related." *Id.*  The Court also found that

3  the plaintiff had met the requirement of at least one common legal or factual issue.  It noted that

4  the plaintiff would need to establish ownership of the copyright and the conduct amounting to

5  infringement against all Defendants.  Further, the evidence regarding how BitTorrent works and

6  how Plaintiff investigated the conduct at issue would be common to all claims.  *Id.* at 14.  *See*

7  *also Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D056012 9AFEE8D78CE*

8  *07F2394C7 B5BC9C05,* 821 F. Supp. 2d 444, 451-52 (D. Mass. 2011) (concluding that joinder

9  of claims against a swarm of BitTorrent downloaders was proper); *Malibu Media, LLC v. Does*

10  *1-5,* No. 2:12-cv-2954 (NRB) (S.D.N.Y. August 24, 2012) (same).[9]

11       The Court's OSC suggests that the Court has concerns regarding the impact of copyright

12  infringement actions of this sort on its docket and Plaintiff is cognizant of these concerns.

13  However, Plaintiff respectfully requests that the Court also consider the limited options it and

14  other copyright owners have in seeking redress for the losses they are sustaining as a result of

15  piracy by way of  peer-to-peer file sharing through BitTorrent.  With respect to this issue, the

16  Court in *Donkeyball Movie, LLC v. Does 1-171,* 810 F. Supp. 2d 20 (D.D.C. 2011), noted as

17  follows:

18

19       [9]  As the Court is undoubtedly aware, various U.S. District Courts have considered
the issue of joinder of claims stemming from BitTorrent downloading and have reached differing

20  conclusions on this issue.  *See Malibu Media, LLC v. Does 1-15,* Case No. 2:12-2077 (E.D. Pa.
July 30, 2012) (memorandum opinion denying motions to sever and to quash subpoena and

21  summarizing decisions respectively allowing and disallowing joinder).  Plaintiff submits that the
decisions allowing joinder are both more persuasive and more consistent with the purpose of

22  Rule 20(a)'s expansive approach to joinder, particularly at this early stage of the litigation.  For a
detailed discussion of how BitTorrent downloading works and why joinder is appropriate for

23  claims against those using BitTorrent to download a given motion picture, see  Report and

24  Recommendation Re: Motions to Sever Defendants, Dkt No. 61 in *Malibu Media, LLC v. Does*
*1-30,* No. 2:12-cv-13312-DPH-MJH) (E.D. Mich. May 16, 2013),  attached hereto as Attachment

25  1.

26

27  14  PLAINTIFF'S RESPONSE TO ORDER TO     The VanderMay Law Firm PC
      SHOW CAUSE AND QUASHING SUBPOENAS   2021 S. Jones Blvd.

28        (2:13-CV-560)                          Las Vegas, Nevada 89146
                                       (702) 358-9300

"This Court similarly must evaluate judicial economy and the administrative burdens of managing such cases, set against the challenge this broad-scale allegedly infringing activity represents for the copyright owners. Copyright owners' efforts to protect their copyrighted works through Doe actions are 'costly[,] time consuming[,] ... cumbersome and expensive.' *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter,* 393 F.3d 771, 782 (8th Cir.2005) (Murphy, J., dissenting). Yet, copyright owners have limited alternatives to obtain redress for infringement of their protected works other than such lawsuits. *See Arista Records LLC v. Does 1–27,* 584 F. Supp. 2d 240, 252 (D.Me.2008) ('the Court begins with the premise that the Plaintiffs have a statutorily protected interest in their copyrighted material and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interests.'); *In re Charter Commc'ns,* 393 F.3d at 775 n. 3 ('[A]s a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity.'). Courts must nonetheless maintain supervision of these lawsuits and, at some point, the sheer number of putative defendants involved in a single case may necessitate severance."

810 F. Supp. 2d at 30-31.

Plaintiff submits that allowing this action to proceed against 194 Doe Defendants at this preliminary stage furthers both the Court's interest in managing its docket and Plaintiff's interest in seeking redress for the infringement of its copyrighted work.

Lastly, the Court's OSC expresses concern at the possibility that "the judicial authority of the United States may be used to wrest improvident settlements from pro se litigants under threat of huge statutory penalties." Court's OSC / Dkt. # 7 at 2.  While Plaintiff is cognizant of the bases for the Court's concern and addresses this issue in the accompanying declaration of counsel, it submits that nothing in its conduct nor in that of its counsel indicates that Plaintiff has any such intent and, therefore, its claims should not be severed due to the superficial similarity between its claims and those of others.  *See* Memorandum and Order, *Malibu Media, LLC v. Does 1-5,* No. 2:12-cv-2954 (NRB) at 12, (S.D.N.Y. August 24, 2012)  *(*declining to exercise discretion to sever claims due to reluctance "to prevent plaintiff from proceeding with its case

15   PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-560)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

1  based only on a 'guilt-by-association' rationale").

2                                  CONCLUSION

3          For the reasons set forth herein, Plaintiff respectfully requests that the Court allow this

4  action to proceed against all Doe Defendants, that it lift the stay of this proceeding and that it re-

5  instate the quashed subpoenas to the ISPs listed on Exhibit 1 to the complaint.

6  DATED: May 23, 2013

7                                          Respectfully submitted,

8                                          The VanderMay Law Firm PC

9                                          /s/ Maureen C. VanderMay
                                           Maureen C. VanderMay, WSBA No. 16742
10                                         Email: thethompsonswa@vandermaylawfirm.com
                                           The VanderMay Law Firm PC
11                                         2021 S. Jones Blvd.
                                           Las Vegas, Nevada 89146
12                                         (702) 538-9300
                                           Of Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                         The VanderMay Law Firm PC
                                           2021 S. Jones Blvd.
27  16    PLAINTIFF'S RESPONSE TO ORDER TO    Las Vegas, Nevada 89146
          SHOW CAUSE AND QUASHING SUBPOENAS  (702) 358-9300
28        (2:13-CV-507)