1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE THOMPSONS FILM, LLC,

       Plaintiff,

   v.

DOES 1 - 194,

       Defendants.

Case No.  C13-0560RSL

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE

     This action was filed on March 28, 2013.  Each of the Doe defendants is identified only by an IP address linked to the on-line sharing of the movie "The Thompsons."  Plaintiff asserts direct, contributory, and indirect copyright infringement claims against each Doe defendant.  The Court granted plaintiff's motion to initiate early discovery from internet service providers in order to obtain information sufficient to identify the owner of each IP address.

     On May 9, 2013, the Court issued an order to show cause acknowledging concerns regarding the propriety of joinder and the possibility that plaintiff was using the judicial authority of the United States to wrest improvident settlements from *pro se* litigants under threat of huge statutory penalties.  The Court stayed the above-captioned matter and required plaintiff to provide copies of all written communications with the owners of the IP addresses and summaries of all oral communications with those

1  individuals.  In addition, the Court ordered plaintiff to show cause why the case should

2  not be dismissed for improper joinder and/or pursuant to the Court's inherent authority to

3  control its docket.  On May 31, 2013, Doe 51 filed a "Motion to Sever & Dismiss and/or

4  Issue a Protective Order" (Dkt. # 27) related to the joinder issue.  Having reviewed

5  plaintiff's response to the order to show cause and the motion to sever, the Court finds as

6  follows:

7  **A.  Joinder**

8     Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements

9  for the permissive joinder of defendants.  First, the right to relief against defendants must

10  arise out of "the same transaction, occurrence, or series of transactions or occurrences."

11  Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common

12  to all defendants. Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of

13  the complaint as true and considering the declarations of plaintiff's investigator, the Court

14  finds that these requirements are easily met.  Plaintiff's investigator found that a user of

15  the IP addresses identified in this action possessed a pirated copy of "The Thompsons,"

16  that each copy was a reproduction of the same original, and that plaintiff's investigator

17  downloaded a portion of the pirated copy from each defendant.  The Court finds that

18  defendants' knowing participation in an on-line media distribution swarm, the purpose of

19  which was to distribute copies of a single original and which actually resulted in such

20  distribution, is a series of transactions or occurrences that justifies joinder under Rule

21  20(a)(2)(A).  The Court declines to require allegations or evidence that each defendant

22  directly exchanged data with every other defendant.  Such a requirement would ignore the

23  realities of how the BitTorrent system works, including its planned anonymity and

24  universal donor aspects.  Neither the language of the Rule nor the policies behind it

25  suggest that direct contact between participants in a group is necessary to justify joinder.

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 2

1    The Court further finds that litigating this case will involve common

2  questions of fact and/or law regarding the existence of a swarm, the alleged downloads,

3  plaintiff's ownership of the copyright, and the elements of infringement.  The fact that

4  persons associated with the IP addresses may have individual defenses to plaintiff's

5  claims does not change the fact that there will be some common questions of law or fact:

6  not all of the legal and factual issues must be identical as to all defendants.  Patrick

7  Collins, Inc. v. Does 1-21, 282 F.R.D. 161, 168 (E.D. Mich. 2012).

8    Although the specific requirements of Rule 20 are met, the Court must also

9  determine whether permissive joinder will "comport with the principles of fundamental

10  fairness."  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).  Factors

11  relevant to this determination include the possible prejudice to any party, delay caused by

12  joinder, the motives for joinder, the closeness of the relationship between the joined

13  parties, notice to the parties, and the effect of joinder on jurisdictional issues.  Desert

14  Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980).  In the Ninth

15  Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order

16  to promote trial convenience and to expedite the final determination of disputes, thereby

17  preventing multiple lawsuits."  League to Save Lake Tahoe v. Tahoe Reg'l Planning

18  Agency, 558 F.2d 914, 916-17 (9th Cir. 1977).

19    Jointly litigating the facts related to the swarm plaintiff has identified and

20  the legal issues related to infringement is more efficient for plaintiff and the Court than

21  litigating 194 suits involving only one IP address each.  In addition, the nature of the

22  swarm and the BitTorrent protocol, with its many pieces and multiple sources, suggests

23  that joint litigation may be necessary for plaintiff to substantiate its theory that defendants

24  acted in concert to download copyrighted material, even if the segment downloaded from

25  a particular defendant, considered alone, might not constitute copyright infringement.

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 3

1   Defendants, on the other hand, gain no appreciable advantage through individual

2   litigation: in either case, defendants will be able to offer individual defenses to the

3   allegations. Nor does there appear to be any significant risk of liability by association.[1]

4   Jointly litigating these claims also allows defendants, many of whom will undoubtedly

5   proceed *pro se*, to pool resources, rely on arguments raised by other defendants, and/or

6   benefit from the participation of retained counsel. The only potential advantage to

7   severance appears to be the hope that plaintiff will give up its claims, no matter how

8   meritorious, in the face of mounting costs. If, as the Court is willing to assume at this

9   stage in the proceeding, plaintiff's allegations are true and its copyright has been

10   infringed, such a result is neither just nor fair.

11          The Court further finds that there is no indication that joinder will impact

12   the Court's subject matter jurisdiction and that defendants' alleged participation in a

13   knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint

14   litigation even if defendants remained unaware of the identity of their fellow BitTorrent

15   users.

16          The Court is, however, concerned about the impact that joinder has had on

17   the handling of similar litigation pending in this district and how that handling reflects on

18   plaintiff's motives for amassing the group of defendants in this case. To be clear, the

19   Court finds that joinder under Rule 20 for purposes of prosecuting copyright infringement

20   claims against members of a swarm in a single lawsuit can be appropriate. If, upon

21   receipt of identifying information regarding the individuals associated with the IP

22   addresses at issue, plaintiff timely affects service and actually prosecutes this case, the

23   goals of efficiency, justice, and expeditious resolution of the dispute will be served. If,

24   _____

25          [1] Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May
     4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be
26   prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 4

1   however, service is not affected and the pendency of this action is simply used as a

2   cudgel, mass joinder will cause delay and raise all sorts of potential for abuse, as

3   discussed more fully below.

4           In the circumstances of this litigation, the Court finds that joint litigation

5   against numerous participants in a single swarm satisfies the specific requirements of

6   Rule 20(a)(2) but that the joinder may ultimately create a procedural imbalance which,

7   left unchecked, would not comport with the principles of fundamental fairness.

8       **B.  Lack of Service**

9           Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120

10  days after the complaint is filed, the court – on motion or on its own after notice to the

11  plaintiff – must dismiss the action without prejudice against that defendant or order that

12  service be made within a specified time."  The time for service has now passed, but

13  plaintiff had more than two months left on the service clock when the above-captioned

14  matter was stayed.  There is reason to doubt whether timely service would have been

15  affected in the absence of the stay, however.  Even when plaintiff learned the identity of

16  persons associated with the IP addresses at issue in this case, it delayed service in favor of

17  pursuing discovery and settlement negotiations.[2]

18          As subscribers became aware of the lawsuit, they predictably began

19  contacting plaintiff's counsel in order to obtain information.  Counsel apparently

20  collected identifying information and sent a demand letter, a sheet of "Frequently Asked

21  Questions," a copy of the complaint, and a waiver of service of summons form.  Plaintiff

22  has not provided a copy of its Release & Settlement Agreement – presumably because

23

24          [2]  The packet sent to individuals who contacted counsel included a demand letter, a copy of the
25  complaint, and two copies of the waiver of service of summons form.  There is, however, no indication
    that plaintiff included a prepaid means of returning the form as required by Fed. R. Civ. P. 4(d)(1)(C).
26  Nor were any proofs of actual service filed as required by Fed. R. Civ. P. 4(l).

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 5

1   negotiations did not proceed to that point before the stay was entered – but the

2   information available to the Court raises concerns regarding overreaching and procedural

3   unfairness.

4           Plaintiff's demand letter and FAQ sheet paint a dire portrait of the

5   recipient's situation.  Plaintiff emphasizes the risk of huge damage awards (nine mentions

6   of statutory penalties and/or judgments of $150,000 or more)[3] and the possibility of an

7   attorney's fee award (at least eight references, including a warning that fees "can be

8   thousands; tens of thousands if the matter proceeds to trial").  Plaintiff also warns that

9   additional claims for spoliation could be filed against the recipient, that being named in

10  the lawsuit increases the risk that other copyright holders will take an interest in the

11  recipient's activities, and even that failure to settle could ultimately result in the loss of

12  the recipient's house if he or she is unable to pay the judgment amount.  Plaintiff demands

13  a sizeable settlement amount, which is available for only two weeks before it jumps even

14  higher.  Plaintiff's advice regarding the association of counsel (the court will not appoint

15  counsel in a civil suit), the validity of possible defenses (failure to password protect

16  and/or monitor the use of your internet connection generates liability), and the bankruptcy

17  code (this type of debt would likely be nondischargeable) is suspect.  Finally, plaintiff

18  invites the recipient to provide access to his or her computer or other evidence proving

19  that he or she did not download "The Thompsons."

20          When plaintiff sought permission to conduct discovery in this case, it

21  represented the discovery as both limited and efficacious:  by subpoenaing subscriber

22  identification information from the ISPs, plaintiff would be able to pursue this lawsuit and

23

24          [3]  The $1,500,000 damage award touted in the FAQs was a default judgment entered when
25  defendant failed to appear.  Contrary to plaintiff's supposition, there is no indication that the court
    considered the viral nature of the BitTorrent protocol when it granted plaintiff's unopposed demand for
26  statutory damages.

protect its copyrights.  It turns out, however, that identifying the account holder may tell us very little about who actually downloaded "The Thompsons" using that IP address.  As one court noted, "it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual who pays the telephone bill made a specific telephone call."  In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012).  In fact, it is less likely.  Home wireless networks are ubiquitous, meaning that a single IP address can simultaneously support multiple computer devices throughout the home and, if not secured, additional devices operated by neighbors or passersby.  Thus, the risk of false positives is very real.  Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012).  It is not clear that plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual contentions regarding an internet subscriber's infringing activities based solely on the fact that he or she pays the internet bill.  Plaintiff seems to be aware of this problem and has refrained from identifying the Doe defendants more specifically even after it learns the name of the subscriber.  Plaintiff does not, however, take the appropriate step of returning to the Court to seek permission to conduct additional discovery.  Rather, plaintiff demands that the subscriber prove he or she did not download "The Thompsons."  Therein lies the rub.  Plaintiff has effectively obtained access to unrepresented individuals and parleyed that access into open-ended and unlimited discovery, despite the very narrow discovery order entered by the Court.

In this context, the 120-day service deadline is the only thing that limits plaintiff's unsanctioned discovery expedition.  If plaintiff feels it has enough information to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an IP address, it should serve the complaint and initiate litigation subject to the limitations imposed by the rules of civil procedure.  If, on the other hand, plaintiff would have

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 7

trouble justifying a factual contention that the internet subscriber must, by virtue of that fact, be the downloader, it could seek an extension of the service deadline, explaining why it was unable to obtain the information in a timely manner and identifying steps to be taken that would allow litigation to begin.  If those steps include additional discovery, further permission of the Court would be necessary.

In short, plaintiff must actually prosecute the claims it has asserted.  Instead, plaintiff's litigation strategy seems to be to use the pendency of this action to create a period of time in which it can scare subscribers into settlement as the only means of avoiding both litigation costs and harsh statutory penalties.  The communications disclosed to the Court show that plaintiff makes every effort to educate subscribers regarding the statutory penalties he or she faces.  Coupled with the clear implication that evidence of IP address ownership is legally sufficient to establish copyright infringement and the demand that the subscriber prove his or her innocence, it is not surprising that subscribers – whether guilty or not – may choose to settle.  While the risk of improvident settlements and overreaching cannot be eradicated, the Court will enforce not only the procedural rules that favor plaintiff, but also those that protect defendants.  Absent extraordinary and unforeseeable circumstances, the service deadline in this case will be strictly enforced in order to reduce the risk of overreaching.

## C.  Protective Order

Doe 51 objects to the subpoena issued to his ISP, arguing that the information sought is not likely to lead to the discovery of the person who used his IP address to download "The Thompsons" and that the disclosure of his contact information will cause him annoyance, embarrassment, oppression, and undue burden/expense.  Although there is no guarantee that the subscriber associated with a certain IP address was the person who downloaded the movie, discovery regarding the subscriber's identity is

1   plainly relevant under the Federal Rules of Civil Procedure.  In some instances, the

2   subscriber is, in fact, the one who infringed plaintiff's copyright.  At the very least, the

3   subscriber is likely to have information regarding the users of the IP address that would

4   lead to the discovery of the actual infringer.  Doe 51's relevance related objections to the

5   subpoena (Dkt. # 27 at 14-19) are overruled.

6            Nor has Doe 51 established that the disclosure of his name, address, email

7   address, and Media Access Control address would cause embarrassment or undue burden

8   in the circumstances presented here.  "The Thompsons" is a horror thriller:  being

9   identified in a lawsuit involving the film is not socially damaging in the same way that

10  being associated with a pornographic film would be.  To the extent that plaintiff's

11  litigation strategy poses a risk of overreaching or oppression, the Court will require

12  plaintiff to timely investigate and prosecute the claims asserted within the confines of the

13  litigation.  Precluding discovery of identifying information altogether would prevent

14  copyright holders from enforcing their rights in the BitTorrent context, no matter how

15  meritorious the claim or how blatant or widespread the infringement.  While the Court is

16  cognizant of the need to balance the various interests at issue in this litigation, a

17  prohibition on early discovery, no matter how targeted and innocuous, tilts the balance too

18  far in the favor of the putative defendants.

19

20           For all of the foregoing reasons, Doe 51's motion to sever or dismiss and

21  request for a protective order (Dkt. # 27) is DENIED.  The stay of the above-captioned

22  case is hereby lifted and plaintiff may again pursue identifying information regarding the

23  Doe defendants from the ISPs pursuant to the Court's prior discovery order.[4]  Plaintiff

24  shall have eighty days from the date of this Order to complete discovery and affect service.

25  _____

26       [4] Doe 128's request for oral argument (Dkt. # 31) is DENIED.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 9

1  Failure to file proof of service on or before the eightieth day will result in the dismissal of

2  plaintiff's claims as to each unserved defendant.

3

4      Dated this 7th day of August, 2013.

5                    *MMA S Lasnik*

6                    Robert S. Lasnik
                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 10