1

2

3

4

5

6

7                                                           The Honorable Robert S. Lasnik

8

9

10                              UNITED STATES DISTRICT COURT

11                              EASTERN DISTRICT OF WASHINGTON

12   THE THOMPSONS FILM, LLC,          )     Case No.: 2:13-CV-560-RSL
                                       )
13              Plaintiff,             )
                                       )
14   v.                                )
                                       )     FIRST AMENDED COMPLAINT
15   Kimberly Banks, an individual;    )     COPYRIGHT INFRINGEMENT
     Michael Peterson, an individual;  )
16   Jim Whigham, an individual;       )
     Eric Morris, an individual;       )     DEMAND FOR JURY TRIAL
17   Mary Logel, an individual;        )
     Monika Mitchell, an individual;   )
18   Barbara Stanley, an individual;   )
     Joaquin Concepcion; an individual;)
19   Gino Wall, an individual;         )
     Leroy Sunde, an individual;       )
20   Crystal Ewing, an individual;     )
     Kyle Baxter, an individual;       )
21   Maureen Graziano, an individual;  )
     Tracy Clack, an individual;       )
22   Doan'nhi Nguyen, an individual;   )
     Eldra Hardenbrook, an individual; )
23   Donald Helgeson, an individual;   )
     DOES 1-6; DOES 8-15; DOES         )
24   17-19; DOES 21-26; DOE 28;        )
     DOES 30-46; DOES 48-69; DOES      )
25

26

27                                           The VanderMay Law Firm PC
                                             2021 S. Jones Blvd.
28   FIRST AMENDED COMPLAINT                 Las Vegas, Nevada 89146
     (2:13-CV-560-RSL) – Page 1              (702) 538-9300

71-89; DOES 91-92; DOES 94-100; )
DOES 102-103; DOES 105-107;      )
DOES 109-112; DOES 114-151;      )
DOES 153-164; DOES 166-167;      )
DOES 169-170; and DOES 172-194, )
                                 )
                   Defendants.   )
_____          )

Plaintiff The Thompsons, LLC, a limited liability company ("The Thompsons" /

"Plaintiff"), pursuant to F.R.Civ.P. 15(a)(1)(A) hereby submits its first amended complaint and

alleges as follows:

## **INTRODUCTION**

1.      Plaintiff comprises a venture of independent film producers who have worked on notable

films featured at events such as the Sundance Film Festival.

2.      In 2011, Plaintiff produced the original feature length film, *The Thompsons*, as a sequel to

the 2006 multi-award winning independent film *The Hamiltons*.

3.      Shortly after the release of *The Thompsons*, the film began to be illegally copied and

distributed through various means, costing Plaintiff sales and distributions.

4.      Illegal file sharing or pirating is particularly harmful to smaller and independent film

producers such as Plaintiff in that they often lack the marketing and distribution strength of major

studios. With a small or independent producer any loss in market due to illegal activity has a

significant impact.

5.      In the production of a motion picture there are countless expenses and labors, many of

which are not evident in the final project.  Such expenses and labors include writers, staff persons,

construction workers and others who are often union based employees working for a median

salary.

6.      Indeed, the final product produced, which may be less than two hours long, is often

sourced from hundreds of days and tens of thousands of hours of labor, followed by near countless

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 2

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

1   hours of post-production until the final product is ready for viewing in a theater or at home.

2   7.     The end product that many consumers see is a few hours in a theater, or possibly a DVD

3   product that once production is complete has a nominal cost on a per-viewing experience.

4   However, this is misleading to the true costs of the motion picture as the costs to view a

5   completed motion picture or produce a single DVD are nominal compared to what is often years

6   of work by thousands of people leading up to the end product.

7   8.     Added to this is that the only people publicly seen related to the end product, movie stars

8   and those that are known to be affiliated with motion pictures, such as directors and other persons

9   of note, are all generally the highest compensated persons involved with the production of the

10   work leading to the common misunderstanding that people involved in motion pictures are

11   already wealthy.

12   9.     When the perception that those affiliated with a motion picture are already wealthy, and

13   the end product, such as a DVD only costs very little to make, a reality disconnect often builds in

14   the minds of much of the public, namely that those associated with a motion picture do not need

15   any more money.

16   10.    When this reality disconnect meets with the ready availability of pirated copies of motion

17   pictures and the ease with which they can be illegally copied and downloaded at an almost

18   anonymous level, many people feel justified in their pirating or theft of motion pictures.

19   11.    The result is that despite the industry's efforts to capitalize on internet technology and

20   reduce costs to end viewers through legitimate and legal means of online viewing such as through

21   Netflix™, Hulu™, and Amazon Prime™, there are still those that use this technology to steal

22   motion pictures and undermine the efforts of creators through their illegal copying and

23   distribution of motion pictures.

24   / / / /

25   / / / /

26

27   FIRST AMENDED COMPLAINT

28   (2:13-CV-560-RSL) – Page 3

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

12.     A common means of illegally copying and distributing content on the internet is through the use of a peer-to-peer network such as BitTorrent.

13.     In this case each of the Defendants has participated, either directly or indirectly or by facilitating the conduct of others, in illegally copying and distributing Plaintiff's motion picture via BitTorrent.

### JURISDICTION AND VENUE

14.     This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. ("The Copyright Act").

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

### PARTIES

### THE PLAINTIFF

17.     Plaintiff The Thompsons, LLC is a limited liability company with principal offices in Los Angeles, California, that produced the motion picture at issue in this matter.

### The Rights of the Plaintiff

18.     The motion picture in this case, titled *The Thompsons*, has been registered with the United States Copyright Office by the author, The Thompsons Film, LLC, Registration No. PAu 3-651-594.

19.     The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

20.     The motion picture is currently offered for sale in commerce.

21.     Under the Copyright Act, The Thompsons, LLC is the proprietor of all right, title, and interest in the motion picture, including the right to sue for past infringement.

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 4

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

22.     Under the Copyright Act, The Thompsons, LLC also controls the exclusive rights to reproduce the motion picture and to distribute the motion picture to the public.

23.     Plaintiff's motion picture is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment.

24.     Defendants have notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

## THE DEFENDANTS

### In General

25.      Defendants have each played at least one of the following roles in connection with the use of BitTorrent to unlawfully download Plaintiff's motion picture: 1) some or all Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected and used for illegally copying and distributing Plaintiff's motion picture; 2) some or all Defendants contributed to the infringement of Plaintiff's copyrights by others; and 3) some or all Defendants permitted, facilitated and/or promoted the use of the internet access identified by their IP address for the infringing of Plaintiff's exclusive rights under The Copyright Act by others.

26.     Defendants and each of them have illegally and without authorization from Plaintiff copied, downloaded, shared and uploaded Plaintiff's motion picture using the BitTorrent system, and/or contributed to or permitted, facilitated or promoted such conduct by others.

27.     Defendants and each of them have been identified as directly, indirectly or contributorily infringing Plaintiff's copyrights in this district.

/ / / /

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 5

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

28.      Defendants have been identified in the instant case by a specific Internet Protocol or IP address and a "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency).

29.      Under the BitTorrent protocol each file has a unique "hash" tied to a specific file.  In the instant case, all hashes identified on Exhibit 1 to Plaintiff's initial complaint have been confirmed as being for an unauthorized copy of Plaintiff's motion picture.

**Identification of the Named Defendants**

30.      Internet Service Provider ("ISP") Comcast Cable Holdings, Inc. ("Comcast"), upon information and belief, assigned Internet Protocol ("IP") address 24.20.100.147 to Defendant Kimberly Banks for a period of time, including but not limited to 01/14/2013 at 08:28:55 a.m. UTC.

31.      At all times material, Defendant Banks resided in Vancouver, Washington.

32.      Defendant Banks' IP address of 24.20.100.147 was observed infringing Plaintiff's motion picture at 01/14/2013 at 08:28:55 a.m. UTC.

33.      ISP Comcast, upon information and belief, assigned IP address 24.19.20.244 to Defendant Michael Peterson for a period of time, including but not limited to 01/15/2013 at 04:59:20 a.m. UTC.

34.      At all times material, Defendant Peterson resided in Puyallup, Washington.

35.      Defendant Peterson's IP address of 24.19.20.244 was observed infringing Plaintiff's motion picture at 01/15/2013 at 04:59:20 a.m. UTC.

36.      ISP Comcast, upon information and belief, assigned IP address 24.16.37.54 to Defendant Jim Whigham for a period of time, including but not limited to 02/04/2013 at 10:35:03 p.m. UTC.

37.      At all times material, Defendant Whigham resided in Edmonds, Washington.

38.      Defendant Whigham's IP address of 24.16.37.54 was observed infringing Plaintiff's motion picture at 02/04/2013 at 10:35:03 p.m. UTC.

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 6

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

39.     ISP Comcast, upon information and belief, assigned IP address 98.232.4.89 to Defendant Eric Morris for a period of time, including but not limited to 12/30/2012 at 09:03:57 a.m. UTC.

40.     At all times material, Defendant Morris resided in Kirkland, Washington.

41.     Defendant Morris' IP address of 98.232.4.89 was observed infringing Plaintiff's motion picture at 12/30/2012 at 09:03:57 a.m. UTC.

42.     ISP Comcast, upon information and belief, assigned IP address 76.104.147.141 to Defendant Mary Logel for a period of time, including but not limited to 01/24/2013 at 02:25:39 a.m. UTC.

43.     At all times material, Defendant Logel resided in Seattle, Washington.

44.     Defendant Logel's IP address of 76.104.147.141 was observed infringing Plaintiff's motion picture at 01/24/2013 at 02:25:39 a.m. UTC.

45.     ISP Comcast, upon information and belief, assigned IP address 24.17.119.206 to Defendant Monika Mitchell for a period of time, including but not limited to 01/27/2013 at 12:27:19 a.m. UTC.

46.     At all times material, Defendant Mitchell resided in Maple Valley, Washington.

47.     Defendant Mitchell's IP address of 24.17.119.206 was observed infringing Plaintiff's motion picture at 01/27/2013 at 12:27:19 a.m. UTC.

48.     ISP Comcast, upon information and belief, assigned IP address 24.18.24.160 to Defendant Barbara Stanley for a period of time, including but not limited to 02/05/2013 at 04:42:34 a.m. UTC.

49.     At all times material, Defendant Stanley resided in Yelm, Washington.

50.     Defendant Stanley's IP address of 24.18.24.160 was observed infringing Plaintiff's motion picture at 02/05/2013 at 04:42:34 a.m. UTC.

/ / / /

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 7

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

51.     ISP Comcast, upon information and belief, assigned IP address 174.61.240.7 to Defendant Joaquin Concepcion for a period of time, including but not limited to 02/11/2013 at 9:48:03 p.m. UTC.

52.     At all times material, Defendant Concepcion resided in Lacey, Washington.

53.     Defendant Concepcion's  IP address of 174.61.240.7 was observed infringing Plaintiff's motion picture at 02/11/2013 at 9:48:03 p.m. UTC.

54.     ISP Comcast, upon information and belief, assigned IP address 71.231.237.122 to Defendant Gino Wall for a period of time, including but not limited to 02/23/2013 at 9:24:54 p.m. UTC.

55.     At all times material, Defendant Wall resided in Bonney Lake, Washington.

56.     Defendant Wall's  IP address of 71.231.237.122 was observed infringing Plaintiff's motion picture at 02/23/2013 at 9:24:54 p.m. UTC.

57.     ISP Comcast, upon information and belief, assigned IP address 24.17.244.49 to Defendant Leroy Sunde for a period of time, including but not limited to 01/05/2013 at 08:21:44 a.m. UTC.

58.     At all times material, Defendant Sunde resided in Seattle, Washington.

59.     Defendant Sunde's  IP address of 24.17.244.49 was observed infringing Plaintiff's motion picture at 01/05/2013 at 08:21:44 a.m. UTC.

60.     ISP Comcast, upon information and belief, assigned IP address 71.193.240.42 to Defendant Crystal Ewing for a period of time, including but not limited to 01/03/2013 at 10:39:53 a.m. UTC.

61.     At all times material, Defendant Ewing resided in Vancouver, Washington.

62.     Defendant Ewing's  IP address of 71.193.240.42 was observed infringing Plaintiff's motion picture at 01/03/2013 at 10:39:53 a.m. UTC.

63.     ISP Comcast, upon information and belief, assigned IP address 24.18.98.79 to Defendant Kyle Baxter for a period of time, including but not limited to 01/08/2013 at 03:25:09 a.m. UTC.

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 8

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

64.    At all times material, Defendant Baxter resided in Olympia, Washington.

65.    Defendant Baxter's  IP address of 24.18.98.79 was observed infringing Plaintiff's motion picture at 01/08/2013 at 03:25:09 a.m. UTC.

66.    ISP Comcast, upon information and belief, assigned IP address 67.183.44.5 to Defendant Maureen Graziano for a period of time, including but not limited to 01/04/2013 at 11:10:52 p.m. UTC.

67.    At all times material, Defendant Graziano resided in Monroe, Washington.

68.    Defendant Graziano's  IP address of 67.183.44.5 was observed infringing Plaintiff's motion picture at 01/04/2013 at 11:10:52 p.m. UTC.

69.    ISP Comcast, upon information and belief, assigned IP address 24.19.63.88 to Defendant Tracy Clack for a period of time, including but not limited to 01/07/2013 at 10:41:06 p.m. UTC.

70.    At all times material, Defendant Clack resided in Spanaway, Washington.

71.    Defendant Clack's  IP address of 24.19.63.88 was observed infringing Plaintiff's motion picture at 01/07/2013 at 10:41:06 p.m. UTC.

72.    ISP Comcast, upon information and belief, assigned IP address 98.247.54.209 to Defendant Doan'nhi Nguyen for a period of time, including but not limited to 12/12/2012 at 11:02:56 a.m. UTC.

73.    At all times material, Defendant Nguyen resided in Federal Way, Washington.

74.    Defendant Nguyen's  IP address of 98.247.54.209 was observed infringing Plaintiff's motion picture at 12/12/2012 at 11:02:56 a.m. UTC.

75.    ISP Comcast, upon information and belief, assigned IP address 76.121.45.12 to Defendant Eldra Hardenbrook for a period of time, including but not limited to 01/06/2013 at 12:18:44 a.m. UTC.

76.    At all times material, Defendant Hardenbrook resided in Bellingham, Washington.

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 9

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

77.    Defendant Hardenbrook's  IP address of 76.121.45.12 was observed infringing Plaintiff's motion picture at 01/06/2013 at 12:18:44 a.m. UTC.

78.    ISP Comcast, upon information and belief, assigned IP address 67.183.248.248 to Defendant Donald Helgeson for a period of time, including but not limited to 02/09/2013 at 05:14:02 a.m. UTC.

79.    At all times material, Defendant Helgeson resided in Mount Vernon, Washington.

80.    Defendant Helgeson's  IP address of 67.183.248.248 was observed infringing Plaintiff's motion picture at 02/09/2013 at 05:14:02 a.m. UTC.

### Further Identification of the Remaining Doe Defendants

81.    Plaintiff has not named in this amended complaint the persons identified as Does 1-6, Does 8-15, Does 17-19, Does 21-26, Doe 28, Does 30-46, Does 48-69; Does 71-89, Does 91-92, Does 94-100, Does 102-103, Does 105-107, Does 109-112, Does 114-151, Does 153-164, Does 166-167, Does 169-170, and Does 172-194.  Prior to the Court's deadline for naming Defendants and effecting service Plaintiff intends to file notices of dismissal and/or motions with respect the remaining unnamed Defendants.

### **JOINDER**

82.    Plaintiff acknowledges that joinder in this action under F.R.C.P. 20(a)(2) is permissive in that Plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences or transactions and that there are questions of law and fact common to each of the Defendants.

83.    All of the Defendants have collectively acted through BitTorrent  to illegally download and distribute Plaintiff's motion picture, or have contributed to and/or facilitated such conduct by others, each damaging Plaintiff.

84.    As such, Plaintiff's rights to relief, as stated below, ultimately arise out of the same series of transactions and occurrences.

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 10

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

85.     This action also raises substantial questions of law and fact common to all Defendants.

86.     Permissive joinder in the instant case is to permit a more efficient management of Plaintiff's claims against the several Defendants and to reduce the costs to Plaintiff and Defendants and to reduce the costs and burdens on the Court.

87.     Notice is provided, that on being specifically identified and on request from an identified Defendant, Plaintiff agrees to sever any Defendant that claims prejudice in being joined in this matter and to proceed against each such Defendant individually.

## FACTS COMMON TO ALL CLAIMS

### IP Addresses

88.     To connect to the internet and/or to provide such access to others, each Defendant was required to contract with an ISP and create an account for service.  It is the ISP that grants each user access to the internet and the ability to send and receive information, whether in the form of an email, photo or motion picture.

89.     To identify the source and destination of any piece of information, an ISP assigns an IP address to each user which allows data to flow to and from each user of the internet.

90.     Each IP address is unique, and for any one time an IP address can be traced back to a specific ISP account holder and user.

91.     A standard term for any account for service from an ISP is that such service may not be used for illegal activity.  Indeed, many ISPs, such as Comcast, go to considerable lengths to advise their subscribers of their usage policies, including the prohibition of using or permitting use of the account to engage in infringing activity.

92.     Internet piracy and the use of the internet to conduct illegal activity are commonly known. As such, both through the license granted to a user from their ISP to obtain an IP address and through common knowledge, Defendants were on notice of the need to limit the use of their IP address to legal and authorized activity.

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 11

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

**Peer-to-Peer Internet Piracy Via BitTorrent**

93.    As noted by Senator Levin in Congressional hearings on peer-to-peer internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

94.    Defendants, either directly or indirectly, utilized an interactive peer-to-peer file transfer technology protocol to copy Plaintiff's motion picture.

95.    Peer-to-peer networks, at least in their most common form, are computer systems that enable internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the internet.

96.    The particular peer-to-peer protocol at issue in this suit is the BitTorrent protocol.

97.    Defendants and each of them directly or indirectly used BitTorrent in a collective and often interdependent manner via the internet in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture.

98.    To use BitTorrent, a user intentionally downloads a small program that they install on their computers — the BitTorrent "client" application.  The BitTorrent client is the user's interface during the downloading/uploading process.  The client may be free, supported by advertising, offer upgrades or add on services for a fee, or a combination of several options.

/ / / /

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 12

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

99.     A BitTorrent client application typically lacks the ability to search for media or content files. To find media or content available for download (as made available by other BitTorrent users), users intentionally visit a "torrent site" using a standard web browser.

100.    A torrent site is a website that contains an index of media or content being made available by other users (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small files known as "torrent files." Torrent files do not contain actual media or content. Torrent files are used to instruct a user's computer where to go and how to get the desired media or content. Torrent files interact with specific trackers, allowing the user to download the desired media or content.

101.    A torrent site is often an advertisement-revenue based or subscription-supported index of media or content being made available by other users on the network and maintains a listing of movies and television programs among other copyrighted content.

102.    A user then uses the torrent site to connect with other users and exchange content though the BitTorrent protocol often with many users at the same time.

103.    Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

104.    Many participants, possibly including some or all of the Defendants, have paid money to facilitate or permit increased access to content which has been made available without authorization.

105.    The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file is tagged with the file's unique "hash," which acts as a "roadmap" to the IP addresses of other users who are sharing the media or content identified by the unique hash, as well as specifics about the media or content file.

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 13

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

106.     A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users.   When a BitTorrent user seeks to download a motion picture or other content, he or she merely clicks on the appropriate torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it.   In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

107.     A Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows users to share files more quickly and efficiently.   Peer Exchange is responsible for helping users find more users that share the same media or content.

108.     A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "hash" to locate sources for the requested media or content.   Thus, users are able to access a partial list of other users with the media or content they want rather than being filtered through a central computer called a tracker.   By allowing users to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this media or content is also helping to hold this worldwide network together.

109.     Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file.   The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing media or content on a torrent network is also a source for others to download that media or content.

110.     Thus, each IP address identified by the tracker is an uploading user who is running a BitTorrent client on his or her computer and who is offering the media or content for download. Once selected, the downloading user's BitTorrent client then begins downloading the media or content by

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 14

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

1  communicating with the BitTorrent client programs running on one or more uploading users'
2  computers.

3  111.    The effect of this distributed network of users all downloading and uploading the same file
4  creates what is commonly known as a "swarm" wherein users operate collectively to copy and
5  distribute media and content.

6  112.    Members of the swarm become interconnected to download files, wherein the download
7  creates an exact digital copy on the downloaders' computers.  As additional infringers request the
8  same file, each additional infringer joins the collective swarm, and each new infringer receives pieces
9  of the file from each other infringer in the swarm who has already downloaded any part of the file.

10  113.    This distributed nature of BitTorrent leads to a rapid viral sharing of media and content
11  throughout the collective peer users.  As more peers join the collective swarm, the frequency and
12  speed of successful downloads also increases.

13  114.    Thus, a Defendant's distribution of even a single unlawful copy of the motion picture can
14  result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number
15  of people.  In this case, each Defendant's copyright infringement built upon the prior infringements,
16  in a continuing cascade of infringement going forward.

17  115.    Further, though it is clearly established that numerous Defendants, either directly or indirectly,
18  participated in the exact same swarm, possibly directly linking to each other, the nature of the
19  BitTorrent system is such that the exact same data may be in multiple swarms at the same time. As
20  such, while a single swarm more directly links Defendants, the same data, Plaintiff's motion picture,
21  is being transferred in many swarms, making every identified Defendant a participant in, if not the
22  same transaction or occurrence, the same series of transactions or occurrences - the BitTorrent
23  exchange of Plaintiff's motion picture.

24  / / / /

25  / / / /

26

27  FIRST AMENDED COMPLAINT

28  (2:13-CV-560-RSL) – Page 15

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

**Conduct of Defendants**

116.    Plaintiff has recorded each IP address assigned to each Defendant identified herein as actually copying and publishing Plaintiff's motion picture via BitTorrent, as Plaintiff's investigator has downloaded the motion picture from each Defendant's IP identified herein.

117.    This conduct was illegal and in violation of Defendants' license and terms of access to the internet through their ISP.

118.    Each Defendant knew or should have known the infringing conduct observed by Plaintiff was unlicenced and in violation of plaintiff's copyrights.

119.    This case involves one or more swarms in which numerous Defendants, either directly or indirectly, engaged in mass copyright infringement of Plaintiff's motion picture.

120.    Each Defendant's IP address was used to illegally upload and share Plaintiff's motion picture within the swarm.

121.    Upon information and belief, each Defendant whose conduct constitutes direct infringement was a willing and knowing participant in the swarm at issue and engaged in such participation for the purpose of infringing Plaintiff's copyright.

122.    By participating in a swarm, each Defendant whose conduct constitutes direct infringement participated in the exact same or nearly identical transaction, occurrence, or series of transactions or occurrences as the other Defendants.

123.    Upon information and belief, many Defendants also acted in concert with others, including other Defendants by participating in a Peer Exchange.

124.    Upon information and belief, many Defendants also acted in concert with other Defendants and swarm members and by linking together globally through use of a Distributed Hash Table.

125.    Each Defendant's conduct is effectively a collective enterprise constituting substantially similar or identical facts.

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 16

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

**Exemplar Defendant**

126.    For example, IP address 24.20.100.147 which ISP Comcast has identified as having been assigned to Defendant Banks at the time of the subject infringement, was used to initiate the infringing conduct alleged herein by first intentionally logging into one of the many BitTorrent client repositories known for their large index of copyrighted movies, television shows, software and adult videos.  Said IP address was then used to intentionally obtain a torrent file identified by a "hash" or SHA1:88144855EEC090F98A93D85547BD540A8EF50716, in this specific instance which is for Plaintiff's motion picture from the index and intentionally loaded that torrent file into a computer program designed to read such files.

127.    With the torrent file intentionally loaded from said IP address, the user's BitTorrent program used the BitTorrent protocol to initiate connections with hundreds of other users possessing and uploading or sharing copies of the digital media described in SHA1: 88144855EEC090F98A93D85547BD540A8EF50716, namely, Plaintiff's motion picture, including with, upon information and belief, other Defendants.  As the motion picture was copied via said IP address piece by piece, these downloaded pieces of Plaintiff's motion picture were then immediately available to all other Defendants for those Defendants' uses from this direct infringer's computer.

128.    Each of Defendants' assigned IP addresses were used to perform the same acts as those described for Defendant Banks, above. As a result, each of the direct infringers using these addresses also immediately became an uploader, meaning that each downloaded piece was immediately available to other users seeking to obtain the file without degradation in sound or picture quality.  It is in this way that each IP address assigned to Defendants copied and distributed the motion picture at the same time.  Thus, each participant in the BitTorrent swarm was an uploader or distributor and also a downloader or copier of Plaintiff's motion picture.

/ / / /

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 17

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

## CLAIMS FOR RELIEF STATED IN THE ALTERNATIVE

Pursuant to F.R.Civ.P. 8(d)(2), Plaintiff sets forth the following claims for relief in the alternative.

### FIRST CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT

129.   Plaintiff repeats and realleges each of the allegations above.

130.   Defendants have, without the permission or consent of Plaintiff, distributed Plaintiff's motion picture through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

131.   Plaintiff alleges that each Defendant, without the permission or consent of Plaintiff, has used, and continues to use, BitTorrent software to download Plaintiff's motion picture, to distribute the motion picture to the public, including hundreds of other BitTorrent users, and/or to make the motion picture available for distribution to others.

132.   Defendants' actions constitute infringement of Plaintiff's exclusive rights under The Copyright Act.

133.   Defendants' conduct has been willful, intentional, in disregard of and indifferent to Plaintiff's rights.

134.   As a direct and proximate result of Defendants' conduct, Plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

135.   Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

136.   The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.

/ / / /

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 18

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

137.   Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further contributing to the infringement of Plaintiff's copyrights and ordering that each Defendant destroy all copies of Plaintiff's motion picture made in violation of Plaintiff's rights.

## SECOND CLAIM FOR RELIEF

### CONTRIBUTORY INFRINGEMENT

138.   Plaintiff repeats and realleges each of the allegations 1 - 128 above.

139.   Defendants have, without the permission or consent of Plaintiff, contributed to the infringement of Plaintiff's copyrights by other Defendants and other swarm members.

140.    By participating in the BitTorrent swarm with other Defendants, each Defendant induced, caused or materially contributed to the infringement of Plaintiff's exclusive rights under the Copyright Act by other Defendants and other swarm members.

141.   Defendants' conduct has been willful, intentional, in disregard of and indifferent to Plaintiff's rights.

142.   As a direct and proximate result of Defendants' conduct, Plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

143.   Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

144.   The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.

145.   Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further contributing to the infringement of Plaintiff's copyrights and ordering that each Defendant destroy all copies of Plaintiff's motion picture made in violation of Plaintiff's rights and take such further steps as are necessary to prevent further infringement.

/ / / /

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 19

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

**THIRD CLAIM FOR RELIEF**

**Alternative Statement Pursuant to FRCP 8(d)(2)**

**Indirect Infringement of Copyright**

146.   Plaintiff repeats and realleges each of the allegations 1 - 128 above.

147.   Defendants obtained internet access through an ISP and permitted, facilitated and/or promoted the use of the internet access identified with the specific IP address for the infringing of Plaintiff's exclusive rights under The Copyright Act by others.

148.   Defendants, and each of them, are liable as indirect or secondary infringers.

149.   Defendants, and each of them, failed to secure, police and protect the use of their internet service against illegal conduct, including the downloading and sharing of Plaintiff's motion picture by others.

150.   Defendants' failure was with notice as illegal conduct is in violation of the law and in violation of the license for access granted to each Defendant by their ISP which issued them an IP address to access the internet.

151.   Defendants' conduct has been willful, intentional, in disregard of and indifferent to Plaintiff's rights.

152.   As a direct and proximate result of Defendants' conduct, Plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

153.    Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

154.   The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.

/ / / /

/ / / /

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 20

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

155. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further indirect infringement of Plaintiff's copyrights and ordering that each Defendant destroy all copies of Plaintiff's motion picture made in violation of Plaintiff's rights and take such further steps as are necessary to prevent further indirect infringement.

**DAMAGES**

156. Plaintiff has been damaged and claims damages of $30,000.00 from each Defendant on its First and Second Claims for Relief pursuant to 17 U.S.C. § 504(c)(1) and, in the alternative, damages on its Third Claim for Relief pursuant to 17 U.S.C. § 504(c)(1) of not more than the statutory minimum of $750.00.

**Notice of Further Claims**

157. While the relief prayed for by Plaintiff is specific and less than may be allowed by law, Plaintiff hereby provides notice of the potential damages available under various laws, such as 17 U.S.C. § 504, which include:

a. Defendants' profits;

b. Plaintiff's full damages;

c. Statutory damages of up to $150,000.00 against each Defendant should there be a finding of willful conduct;

d. All costs and attorneys' fees of this action; and

e. Broad equitable relief, including the destruction of all infringing articles and equipment used in the infringement.

158. Plaintiff gives notice it may move for permission to amend its complaint so as to elect the full scope of relief available against each or any Defendant as discovery proceeds.

159. Similarly, as discovery proceeds Plaintiff may move to amend its complaint to name additional direct infringers of its copyrighted work.

/ / / /

FIRST AMENDED COMPLAINT
(2:13-CV-560-RSL) – Page 21

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300

1

## PRAYER FOR RELIEF

2    WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

3    A.  On all Claims for Relief:

4    1.  For entry of permanent injunctions enjoining each Defendant from directly, contributorily

5    or indirectly infringing Plaintiff's rights in Plaintiff's motion picture, including without limitation by

6    using the internet to reproduce or copy Plaintiff's motion picture, to distribute Plaintiff's motion

7    picture, or to make Plaintiff's motion picture available for distribution to the public, except pursuant

8    to a lawful license or with the express authority of Plaintiff, and further directing Defendants to

9    destroy all unauthorized copies of Plaintiff's motion picture and for such other;

10   2.  Plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

11   3.  Any further relief as the Court deems proper;

12   B.  On its First and Second Claims for Relief Only, for $30,000.00 damages pursuant to 17

13   U.S.C. § 504;

14   C.  On its Third Claim for Relief Only, for statutory damages of not more than $750.00

15   pursuant to 17 U.S.C. § 504 should Defendant be found liable solely for non-willful infringement

16   under Plaintiff's alternate theory.

17

## DEMAND FOR JURY TRIAL

18   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

19   DATED: October 16, 2013

Respectfully submitted,

20

The VanderMay Law Firm

21

By: s/ Maureen C. VanderMay

22   Maureen C. VanderMay, WSBA No. 16742
email: thethompsonswa@vandermaylawfirm.com

23   The VanderMay Law Firm PC
2021 S. Jones Blvd.

24   Las Vegas, Nevada 89146
(702) 538-9300

25   Of Attorneys for Plaintiff

26

The VanderMay Law Firm PC
2021 S. Jones Blvd.

27   FIRST AMENDED COMPLAINT                     Las Vegas, Nevada 89146

28   (2:13-CV-560-RSL) – Page 22                 (702) 538-9300