# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE LEAGUE OF WOMEN VOTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | NO. 1:11-cv-5569 |
| | ) | |
| PAT QUINN, in his official capacity as Governor, | ) | Judge Elaine E. Bucklo |
| of the State of Illinois, and WILLIAM M. | ) | Judge Diane S. Sykes |
| McGUFFAGE, JUDITH C. RICE, BRYAN A. | ) | Judge Philip P. Simon |
| SCHNEIDER, CHARLES W. SCHOLZ, JESSE R. | ) | |
| SMART, HAROLD D. BYERS, ERNEST C. | ) | |
| GOWEN and BETTY J. COFFRIN in their | ) | |
| Official capacities as members of the | ) | |
| Illinois State Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is the second of two cases filed in this district challenging the Illinois General Assembly's most recent redistricting of the state's legislative districts. This one is brought by the League of Women Voters (LWV) who claim that their First Amendment rights have been violated by the redistricting plan. The Defendants – the Governor and individual members of the Illinois State Board of Elections – have now moved to dismiss. Because the redistricting plan in no way burdens the exercise of First Amendment rights of LWV or its members, Defendants' Motion to Dismiss the Amended Complaint [DE 17] will be granted.

### BACKGROUND

Just like the first redistricting challenge brought by Christine Radogno, the Minority leader of the Illinois Senate, and others (1:11-cv-4884), this case challenges the General Assembly Redistricting Act of 2011, which cemented Illinois's proposed new map of 118 House districts and 59 Senate districts. After the first challenge to the redistricting plan had already

been filed, LWV initiated this case. LWV's original complaint challenged both the redistricting plan for Illinois's General Assembly seats and the redistricting plan for Illinois's federal seats in the House of Representatives. Since that complaint was sufficiently related to the redistricting challenge brought by Radogno, this case was reassigned to us so that it could be handled by the same three-judge panel handling the Radogno case. This reassignment was on the condition, however, that LWV file an amended complaint limited only to the redistricting plan for Illinois's General Assembly seats. That Amended Complaint was filed on September 1, 2011, and Defendants filed their motion to dismiss a week later.

Defendants' motion originally challenged LVW's standing to assert a First Amendment challenge on behalf of its individual members. Defendants did not pursue that challenge further in their reply brief, however, and for good reason, as LVW's associational standing is sufficiently well established in the Amended Complaint. Moreover, all parties now agree that Governor Pat Quinn should be dismissed as a Defendant. The only issue now before us is thus whether LVW's Amended Complaint states a cognizable claims against the remaining Defendants.

## DISCUSSION

LWV's Amended Complaint raises a single count based on a discrete legal theory: Illinois's redistricting plan is unconstitutional because it is a content-based restriction on LWV members' First Amendment rights of expression. LWV argues that by "adopt[ing] a redistricting scheme based on partisan speech and other content-based expressive activity," the Defendants have implemented an unconstitutional content-based restriction on speech "without any

safeguards to ensure the least possible regulation or abridgment of protected speech and expressive activity." [DE 11 at 2.]

LVW contends that the redistricting plan explicitly "took account of the 'partisan composition' of the new districts," and the plan is therefore "based on the content of partisan speech or viewpoints of residents." [DE 11 at 7.] The redistricting plan thus "unlawfully abridge[s] or regulate[s] expressive activity" of LWV's members because it is "attempting to control or influence the kinds of views, opinions and speech that members of the League of Women Voters of Illinois and other state residents placed in those districts are likely to express or hear and receive." [DE 11 at 7, 9.] Precisely how the redistricting plan accomplishes this feat, however, is entirely unclear from the Amended Complaint.

LWV correctly acknowledges that this is a novel legal theory for redistricting cases. It grows out of two new Supreme Court holdings, *Citizens United v. Federal Election Comm'n*, 558 U.S. _, 130 S.Ct. 876 (2010) and *Arizona Free Enterprise Club's Freedom Club v. Bennett*, _U.S. _, 131 S. Ct. 2806 (2011), which – according to LWV – "significantly strengthen the limiting effect of the First Amendment on government regulation of electoral matters." [DE 26 at 3.]

In LWV's view, *Citizens United* and *Arizona Free Enterprise* "foreclose the use of 'viewpoint based' redistricting to control, adjust or influence electoral speech or partisan activity in state legislative campaigns on First Amendment grounds." [DE 26 at 6.] According to LWV, by considering "the 'partisan composition' of a district in redrawing its lines," the redistricting plan is "*countering* the expression by LWV-IL members and other citizens who expressed views tilting their districts too far to one side or the other." [DE 26 at 12.] Under *Citizens United* and

*Arizona Free Enterprise*, this viewpoint-based gerrymandering violates the First Amendment because Illinois "may not 'seek to restrict the speech of some elements of our society in order to enhance the relative voice of others.'" [DE 26 at 3 (quoting *Citizens United*).] Illinois's attempt "to balance or control electoral speech" is therefore – the argument goes – "a violation of the First Amendment because it seeks to control 'the marketplace of ideas.'" [DE 26 at 2.] As LWV summarizes its position, "the government is regulating electoral speech for a purpose that the Supreme Court has condemned as unlawful in both *Citizens United* and *Arizona Free Enterprise* . . . ." [DE 26 at 7.]

It is of course true that the First Amendment broadly protects political expression in order to foster the uninhibited exchange of ideas among the citizenry. *Buckley v. Valeo*, 424 U.S. 1, 14 (1976). In *Buckley,* for example, a law that capped a candidate's expenditure of personal funds to finance a political campaign was found to burden the candidate's First Amendment right to engage in unfettered political speech. *Id*; *see also Davis v. Federal Election Comm'n*, 554 U.S. 724, 741 (2008) (finding unconstitutional a law that "imposes a substantial burden on the exercise of the First Amendment right to use personal funds for campaign speech").

The problem with LWV's argument, however, is that it brushes aside a critical first step to bringing a content-based First Amendment challenge: the challenged law must actually restrict some form of protected expression. It seems a rather obvious point. *See*, *e.g.*, *Meese v. Keene*, 481 U.S. 465, 480-82 (U.S. 1987) (reversing a district court finding that the Foreign Agents Registration Act's use of the term "political propaganda" violated the First Amendment because, in "the absence of any direct abridgment of speech," the Act "placed no burden on protected expression"); *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1104 (10th

4

Cir. 2006) ("To qualify as a content-based 'regulation of speech,' a statute must restrict speech or expressive conduct in the first place."); *Asociación de Educación Privada de P.R., Inc. v. Echevarría-Vargas*, 385 F.3d 81, 84-85 (1st Cir. 2004) (a law requiring disclosure of information about changes in school textbooks was not a content-based restriction because it "[did] not purport to address the content of speech; nor [did] it purport to regulate speech at all"); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999) ("As a threshold requirement for the application of the First Amendment, the government action must abridge or restrict protected speech.").

This threshold requirement was obviously met in both *Citizens United* and *Arizona Free Enterprise,* as well as in *Buckley* and *Davis*, as those cases all stand for the proposition that a law may not burden campaign expenditures – long recognized as a form of *speech* – unless it is justified by a compelling state interest. It would therefore be correct to say that *Citizens United* and *Arizona Free Enterprise* "significantly strengthen the limiting effect of the First Amendment on government regulation of" **campaign contributions**. But LWV advertises these cases as applying more broadly: they "significantly strengthen the limiting effect of the First Amendment on government regulation of *electoral matters*." [DE 26 at 3 (emphasis added).]

To which we ask: what does "government regulation of electoral matters" even mean? The way LWV has framed the issue, "electoral matters" is apparently supposed to represent some sort of protected form of expression on par with campaign expenditures. Indeed, LWV repeatedly invokes similarly vague phrases as if they were well recognized categories of expression under the First Amendment. In addition to "electoral matters," LWV also states that the redistricting plan implicates "electoral speech or partisan activity" [DE 26 at 6], "election-

5

related speech" [DE 26 at 8], "electoral debate" [DE 26 at 10], and "free electoral debate" that the redistricting plan "seeks to control or distort" [DE 26 at 14].

Whatever these phrases mean, none of them even begins to satisfy the threshold requirement for a content-based First Amendment challenge here: a showing that the redistricting plan is preventing LWV's members from engaging in expressive activities. Under the redistricting plan, are LWV's members being in any way prohibited from running for office, expressing their political views, endorsing and campaigning for their favorite candidates, voting for their preferred candidate, or otherwise influencing the political process through their expression? The answer is no.

LWV's summary of its members' alleged injuries is similarly vague about the speech or expression actually being burdened by the redistricting plan:

> The viewpoint based redistricting here places distinct burdens on First Amendment rights of LWV-IL members and other citizens. First, it "counters" the views expressed by some LWV-IL members – whether they be Republicans in districts that are too Republican or Democrats in districts that are too Democratic. Second, it interferes with the kind of debate they would hear and receive if the government did not interfere at all. *See Martin v. City of Struthers, Ohio*, 319 U.S. 141. Sometimes the only contested elections take place in the party primaries. There is a different "interchange of ideas" in a district strongly consisting of adherents to one party's views – in one-sided or strongly Democratic or Republican districts, the content of the debate can be quite different, with more competitive primary elections than districts where there is an even balance.

[DE 26 at 18.]

Once again, nothing in this summary indicates that the redistricting plan actually restricts expression. Indeed, LWV's citation to *City of Struthers* is instructive. That case struck down an Ohio city ordinance that prohibited knocking on doors while leafleting, finding that the "freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the

preservation of a free society" that it qualifies as a protected form of expression under the First Amendment. *City of Struthers*, 319 U.S. at 146-147. Illinois's redistricting plan does not prohibit LWV's members from engaging in any similarly "vital" expressive act.

On the contrary, LWV's challenge looks much more like the challenge proposed and rejected in *Walker*. In that case the plaintiff brought a content-based First Amendment challenge to Utah's referendum requirement, which required a super-majority vote for certain types of ballot questions. Plaintiff's theory, as summarized by the Tenth Circuit, was that "every structural feature of government that makes some political outcomes less likely than others – and thereby discourages some speakers from engaging in protected speech – violates the First Amendment." *Walker*, 450 F.3d at 1100. The court affirmed the dismissal of this theory because while "[t]he First Amendment ensures that all points of view may be heard[,] it does not ensure that all points of view are equally likely to prevail." *Id*. at 1101.

Similarly here, LWV seems to believe that since the redistricting plan makes "some political outcomes less likely than others," the speech of its members is burdened or discouraged. We fail to see how. The redistricting plan does not prevent any LWV member from engaging in any political speech, whether that be expressing a political view, endorsing and campaigning for a candidate, contributing to a candidate, or voting for a candidate. And while it is true that the redistricting plan undoubtedly means that one party is more likely to be victorious in any given district, the First Amendment, to repeat, "does not ensure that all points of view are equally likely to prevail."

Note, moreover, the ramifications of LVW's theory: redistricting plans could never take partisanship into consideration without violating the First Amendment. This is an untenable

position, as the Supreme Court has long emphasized that some "burdening" of partisan viewpoints is an inevitable part of drawing district lines. *Gaffney v. Cummings*, 412 U.S. 735, 753 (1973) ("[p]olitics and political considerations are inseparable from districting and apportionment . . . The reality is that districting inevitably has and is intended to have substantial political consequences"). Indeed, the implications of LVW's argument is exactly what the plurality opinion in *Vieth v. Jubelirer*, 541 U.S. 267 (2004) warned against and rejected: "a First Amendment claim [for political gerrymandering], if it were sustained, would render unlawful all consideration of political affiliation in districting, just as it renders unlawful all consideration of political affiliation in hiring for non-policy-level government jobs." *Vieth*, 541 U.S. at 294 (plurality).

In the end, we have no doubt that LWV thinks it is on the cutting edge of redistricting law, presenting a novel legal theory based on a creative and nuanced reading of recent Supreme Court cases. We read those cases much differently. Therefore, LWV's Amended Complaint will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Amended Complaint [DE 17] is **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

ENTERED: October 27, 2011

<div style="margin-left: 3em;">

s/ Elaine E. Bucklo
ELAINE E. BUCKLO, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

s/ Diane S. Sykes
DIANE S. SYKES, JUDGE
UNITED STATES COURT OF APPEALS
SEVENTH CIRCUIT

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

</div>